Owlkill Real Estate, LLC v West Main St. Cambridge Sewage Disposal Assn., Inc. (2024 NY Slip Op 24020)

[*1]

Owlkill Real Estate, LLC v West Main St. Cambridge Sewage Disposal Assn., Inc.

2024 NY Slip Op 24020

Decided on January 25, 2024

Supreme Court, Washington County

Muller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 25, 2024
Supreme Court, Washington County

Owlkill Real Estate, LLC, Plaintiff/Petitioner,

against
The West Main Street Cambridge Sewage Disposal Association, Inc., VANCE BATEMAN, SHAWN BATEMAN and BRIDGET ROWAN, individually and as officers and directors of The West Main Street Cambridge Sewage Disposal Association, Inc., SOUTH DOMINION LTD S.A., and THE NEW YORK STATE ATTORNEY GENERAL, Defendants/Respondents.

Index No. EC2023-36224

The Sgambettera Law Firm, Saratoga Springs (Matthew Sgambettera of counsel), for plaintiff/petitioner.
Tabner, Ryan & Keniry, LLP, Albany (William F. Ryan, Jr. of counsel), for defendants/respondents West Main Street Cambridge Sewage Disposal Association, Inc., Vance Bateman, Shawn Bateman, Bridget Rowan and South Dominion Ltd S.A.[FN1]

Robert J. Muller, J.

On October 5, 1992, the respective owners of properties located at 39, 41-45, 47-49, 51, 55, and 57 West Main Street, Village of Cambridge entered into a written agreement to form "[a] corporation . . . for the purpose of managing [a] joint sewage disposal system and to hold title to the real property [up]on which some or all of the sewage disposal system [is] located" [NYSCEF document No. 23, at ¶ 1]. Defendant/respondent West Main Street Cambridge Sewage Disposal Association, Inc. (hereinafter the Association) was thereafter formed by Certificate of Incorporation dated December 8, 1992 and approved by Supreme Court (Dier, J.) on April 13, 1993 (see N-PCL 104 [e]). This Certificate of Incorporation — subsequently filed with the New York State Department of State — provides, in pertinent part:
"The [Association] is a corporation as defined in [s]ection 102 (a) (5) of the New York State Not-for-Profit Corporation Law. The Association does not contemplate pecuniary [*2]gain or profit to the members thereof nor should it engage in any act or activity of sewage works as described in [a]rticle 10 of the Transportation Corporation Law, and the specific purposes for which it is formed are to provide maintenance, preservation and control of the common areas and sewage disposal within that certain tract of property located in the Village of Cambridge, Towns of Cambridge and White Creek, County of Washington, and State of New York (hereinafter called the 'property'") and to promote the health, safety and welfare of the owners within the property . . . " [NYSCEF document No. 24, at ¶ 2].
The Certificate of Incorporation further provides:
"Every person or entity who is a record owner of a fee or undivided fee interest in any lot contained within the property is subject, by covenants of record, to assessment by the Association, including contract sellers, shall be a member of the Association. . . . Membership shall be appurtenant to and may not be separated from ownership of any lot which is subject to assessment by the Association.
"The affairs of the Association shall be managed by a Board of Directors, who shall be members of the Association" [NYSCEF document No. 24, at ¶¶ 4-5].
Finally, the Certificate of Incorporation provides that "Amendment of the Certificate of Incorporation shall require assent of seventy-five percent (75%) of the entire membership" [NYSCEF document No. 24, at ¶ 8].
The By-Laws of the Association — apparently adopted contemporaneous with the Certificate of Incorporation — then provide:
"The owners of the following parcels shall be deemed members of the Association:
ADDRESSTAX MAP No.[FN2]
39 West Main Street, Cambridge, NY
41-45 West Main Street, Cambridge, NY
47-49 West Main Street, Cambridge, NY
51 West Main Street, Cambridge, NY
55 West Main Street, Cambridge, NY
57 West Main Street, Cambridge, NY
"All present and future [o]wners, tenants and any other person who might use the facilities of the project in any manner are subject to these By-Laws and the rules and regulations promulgated hereunder" [NYSCEF document No. 42, at ¶ 4]. The By-Laws further provide that the Board of Directors may collect annual assessments and capital contributions, and that "[e]ach [p]arcel shall be entitled to one vote as set forth in the Declaration provided that [the p]arcel is current on all capital contributions and assessments" [*3][NYSCEF document No. 42, at ¶ 5 (h)].[FN3]

The septic system was subsequently installed in 1993, with an absorption field, 1,250-gallon grease trap, two 2,000-gallon septic tanks, and a pumping station. Given its size, the system is regulated by the New York State Department of Environmental Conservation (hereinafter the DEC). According to plaintiff/petitioner (hereinafter petitioner), the grease trap and one 2,000-gallon septic tank are used by 39 West Main Street, and the other 2,000-gallon septic tank is used by 49 and 57 West Main Street. The absorption field and pumping station service the entire system. 
Defendants/respondents Vance Bateman and Shawn Bateman took title to 39 West Main Street in 2002, thereafter leasing the premises to a Chinese Restaurant that opened for business in 2003. Defendant/respondent Bridget Rowan took title to 57 West Main Street in 2006. In 2015, the Batemans transferred title to 39 Main Street to defendant/respondent South Dominion Ltd., S.A. (hereinafter South Dominion) — although they apparently retained control over the property. In 2019, petitioner took title to 41-45 and 47-49 West Main Street. 51 and 55 West Main Street are now owned by the Village of Cambridge (hereinafter the Village) and used as a community park.
Petitioner alleges that — since 2004 — there have been ongoing issues with the septic system backing up because, inter alia, the grease trap servicing the Chinese Restaurant is not pumped regularly. According to petitioner, as a result of these issues sewage has risen to the surface several times over the years. After purchasing 41-45 and 47-49 West Main Street, petitioner attempted to work with the Association to address these issues but was largely unsuccessful. On September 22, 2020, Michele Anderson — petitioner's owner — sent an email to Vance Bateman — then President of the Board of Directors — stating as follows: 
"[W]e do not wish to be part of this [A]ssociation in its current incarnation. There is nothing binding us personally or our property and we see no current benefit. We will be happy to pay 2/3 of the cost of pumping the tank that services our property and, when the time comes, we will certainly consider a fair contribution to replace the [absorption] field if we are still using it" [NYSCEF document No. 43, at p 1].
Petitioner thereafter retained an engineer to explore the possibility of disconnecting 41-45 and 47-49 West Main Street from the Association's sewage system and establishing a separate system to service petitioner's . It soon became apparent, however, that the establishment of a separate system was not feasible. 
On March 16, 2021, the DEC served the Association with a Notice of Violation relative to the absorption field. According to this Notice of Violation, the Association would incur a fine in the amount of $37,500.00 per day if repairs were not completed by April 2, 2021. Since that time, it appears the Association has submitted various reports and plans for replacement to the [*4]DEC. Petitioner has been involved to some extent, but its relationship with the Association has continued to devolve. 
On July 7, 2022, Vance Bateman signed an Amended Certificate of Incorporation on behalf of the Association, which modifies the provision relative to membership to read: "Every person or entity who is a record owner of a fee or undivided interest in any lot contained within the Property which is subject, by covenants of record, to assessment by the Association, including contract sellers, is eligible to be a member of the Association as defined within the Association's By-Laws" [NYSCEF document No. 28, at ¶ 4 (emphasis added)]. This Amended Certificate of Incorporation was thereafter filed with the Department of State on March 2, 2023 along with a statement signed by Vance Bateman indicating that the amendment "was authorized by a vote of a majority of the entire [B]oard of [D]irectors[, as t]he corporation has no members" [NYSCEF document No. 48, at p 4]. 
Amended By-Laws were subsequently prepared as well, which provide as follows:
"The owners of the following parcels are eligible to become Members of the Association:
ADDRESS
1) 37-39 West Main Street, Cambridge, NY
2) 41-45 West Main Street, Cambridge, NY
3) 47-49 West Main Street, Cambridge, NY
4) 55-57 West Main Street, Cambridge, NY
"The Board shall hold an election of prospective new Members to be held at a special meeting. If the prospective member fails to obtain 75% of the current Member Flow Votes to be accepted as a Member at the special meeting, the prospective Member becomes a customer of the Association and will possess none of the privileges of an Association Member. If a member at any time declines membership, then they become a customer" [NYSCEF document No. 25, at ¶ 4 (A)].
Insofar as these so-called "Member Flow Votes" are concerned, the Amended By-Laws further provide as follows:
"A member/joint parcel owner who owns a parcel shall be entitled to one Flow vote/Gallons Per Day Flow Rate as estimated by James Hutchins' septic system blue prints dated 26 Aug 1992, provided that member(s) of that parcel are current on all capital contributions, assessments and fees. The Flow Vote totals for each parcel are as follows:
1) 37-39 West Main Street, Cambridge, NY: 1250 Flow Votes
2) 41-45 West Main Street, Cambridge, NY: 450 Flow Votes
3) 47-49 West Main Street, Cambridge, NY: 450 Flow Votes
4) 55-57 West Main Street, Cambridge, NY: 270 Flow Votes
"The votes of each Parcel shall not be divisible nor may the vote thereof he [sic] cast in part" [NYSCEF document No. 25, at ¶ 5 (h)].
Meanwhile, it appears that in April 2023 the Association submitted a report with a proposed replacement for the absorption field, with the DEC responding by correspondence dated May 24, 2023 that the proposed replacement was acceptable. The DEC further advised as follows: "To avoid referral of this matter to the Department's Office of General Counsel for enforcement of the Notice of Violation, you must complete construction of the replacement [*5]system by December 31, 2023" [NYSCEF document No. 5, at p 1].
According to petitioner, the Association accepted several bids for the work with Korb Land Improvement (hereinafter Korb) coming in the lowest — but the work has not yet begun because of a dispute relative to payment. Specifically, petitioner alleges that the Association is attempting to make it pay more than its fair share of the cost of the replacement. Petitioner has apparently placed some money in escrow in an attempt to resolve the dispute, but to no avail.[FN4]

The parties' relationship has now deteriorated to the point that Vance Bateman allegedly tried to have Anderson arrested when she had the septic tank servicing her buildings pumped on November 1, 2023. According to petitioner, when the tank was pumped it was "filled to the top with solids" [NYSCEF document No. 3, at ¶¶ 186-187], and it was "discovered that power to the pump station had been turned off[ and, u]pon information and belief, the last person to inspect the power panel to the pump station was Vance Bateman" [NYSCEF document No. 3, at ¶¶ 189-190]. 
Petitioner commenced this proceeding on November 17, 2023 seeking, inter alia, dissolution of the Association and the appointment of a receiver. Presently before the Court is petitioner's motion by Order to Show Cause seeking (1) dissolution of the Association; (2) the appointment of a temporary receiver; and (3) a preliminary injunction restraining the Association and its directors and officers from exercising any corporate powers and from paying out or otherwise transferring property of the Association pending the conclusion of this proceeding, absent express permission from the Court. 
Petitioner also sought a Temporary Restraining Order (TRO) pending the return date of the motion to (1) enjoin the Association and its directors and officers from exercising any corporate powers and from paying out or otherwise transferring property of the Association pending the hearing of the motion, absent express permission from the Court; and (2) appoint a temporary receiver to retain Korb Land Improvement to replace the absorption field. This TRO was granted in part, with the Association and its officers and directors enjoined from exercising any corporate powers and from paying out or otherwise transferring or delivering any property of the Association pending the return date of the motion. 
The Association, the Batemans, Rowan and South Dominion (hereinafter collectively referred to as respondents) have appeared in opposition to the motion and cross-moved to dismiss the proceeding based upon petitioner's lack of standing. To the extent that standing constitutes a threshold issue, the Court will begin with consideration of the cross motion.
Respondents' Cross Motion
Respondents first contend that petitioner is without standing because it is not a member of the Association, never having been voted in under ¶ 4 (a) of the Amended By-Laws.
The Court finds this contention to be without merit. At the outset, when petitioner [*6]acquired title to 41-45 and 47-49 West Main Street in 2019, the original Certificate of Incorporation and By-Laws were in effect, both of which clearly provide that the owners of 41-45 and 47-49 West Main Street shall be members of the Association. The Amended Certificate of Incorporation was not signed until 2022 and, while the Amended By-Laws are not dated, they implement the amendments and, as such, must have been adopted on or after the date of the Amended Certificate of Incorporation.
To the extent that Anderson expressed a desire for petitioner to withdraw from the Association in 2020, she has indicated that she was unaware of the provisions of the Certificate of Incorporation and By-Laws at that time. Upon discovering the same, she advised Vance Bateman that petitioner no longer wished to withdraw and instead wanted to maintain its membership in accordance with the provisions of the Certificate and By-Laws. Under the circumstances, the Court declines to find that Anderson's statement eliminates petitioner's standing.
In any event, more problematic for respondents is the fact that the Amended Certificate of Incorporation appears to be invalid under the terms of the original Certificate of Incorporation. In this regard, the original Certificate of Incorporation provides that "[t]he affairs of the Association shall be managed by a Board of Directors, who shall be members of the Association" [NYSCEF document No. 24, at ¶¶ 4-5] and, further, that "[m]embership . . . may not be separated from ownership of any lot . . . " [NYCEF document No. 24, at ¶ 4]. It appears that the Batemans relinquished their membership in the Association when they transferred title to 39 Main Street to South Dominion in 2015.[FN5]
This notwithstanding, Vance Bateman served as President of the Board of Directors from April 2019 to September 2023 — and signed the Amended Certificate of Incorporation. Shawn Bateman further served as Treasurer during that time and continues to serve in this capacity. 
The original Certificate of Incorporation also provides that "Amendment of the Certificate of Incorporation shall require assent of seventy-five percent (75%) of the entire membership" [NYSCEF document No. 24, at ¶ 8]. Here, there is no indication that 75% of the entire membership voted in favor of the amendment. Indeed, property owners such as petitioner and South Dominion were not even given an opportunity to vote. Under the terms of the original Certificate of Incorporation and By-Laws, the Village — as owner of 51 and 55 West Main Street — appears to be a member of the Association as well, with a right to vote. Perhaps the Village does not require septic service for 51 and 55 West Main Street and somehow relinquished its membership in the Association upon purchase of the properties. This, however, is unclear from the record. 
Finally, in the Amended Certificate of Incorporation filed with the Department of State, Vance Bateman erroneously indicates that the amendments were adopted by the Board of [*7]Directors because the Association has no members. This is completely inaccurate and contrary to the language in the original Certificate of Incorporation requiring a vote of 75% of the members. 
Respondents next contend that — even if petitioner is a member of the Association — she does not have standing under N-PCL 1102 which provides, inter alia, that "[a] petition for the judicial dissolution of a corporation [must] be presented [b]y ten percent of the total number of members . . . " (N-PCL 1102 [a] [2]). 
This contention is based upon the flow votes outlined in the Amended By-Laws. To the extent that the Amended By-Laws were adopted to implement the Amended Certificate of Incorporation, they too appear to be invalid. That being said, based upon the voting scheme outlined in the original By-Laws, the owner of each parcel is entitled to one vote so long as they are current on all capital contributions and assessments. These By-Laws reference six parcels and petitioner is the owner of two, thus representing 33% of all members. 
While respondents contend that petitioner is not current on all capital contributions and assessments because it has failed to pay any money toward repair of the septic system to date, this contention is without merit. Petitioner has placed monies in escrow but has yet to pay the monies to the Association, as it feels that it is being made to pay more than its fair share. Moreover, these monies were charged in an invoice sent to petitioner as a "customer" of the Association under the Amended By-Laws, and not as an assessment or capital contribution. 
Briefly, it must also be noted that the provisions in the Amended By-Laws which provide for "customers" of the Association appear to be in direct violation of the original Certificate of Incorporation, which precludes the Association from engaging in any act or activity of sewage works as described in Transportation Corporation Law article 10. Counsel for respondents asserted during oral argument that there is no violation because, like members, customers are only charged for maintenance and use of the system — with no pecuniary gain resulting. This contention is without merit, however, as engaging in any act or activity of sewage works as described in Transportation Corporation Law article 10 does not require pecuniary gain. 
Based upon the foregoing, respondents' cross motion to dismiss the proceeding is denied in its entirety.
Petitioner's Motion
Insofar as the first aspect of petitioner's motion is concerned, counsel for petitioner indicated during oral argument that his client no longer seeks dissolution of the Association for purposes of the motion. To the extent that this is the ultimate relief sought in the proceeding — and petitioner has not demonstrated any extraordinary circumstances warranting such relief at this time — such relief would have been denied in any event (see Egan v New York Care Plus Ins. Co., 266 AD2d 600, 601-602 [3d Dept 1999]). 
Turning now to the second and third aspects of the motion, N-PCL 1111 provides as follows: 
"At any stage of an action or special proceeding under this article, the court may, in its discretion, make all such orders as it may deem proper in connection with preserving the property and carrying on the business of the corporation, including the appointment . . . of a receiver under article 12 (Receivership), who may be a director, officer or shareholder of the corporation." N-PCL 1113 (a) (1) then provides:
"At any stage of an action or special proceeding under this article, the court may, in its discretion, grant an injunction, effective during the pendency of the action or special proceeding or such shorter period as it may specify in the injunction, for [the purpose of r]estraining the corporation and its directors and officers from conducting any unauthorized activities and from exercising any corporate powers, except by permission of the court."
Here, the dysfunction inherent in the Association is quite stunning. Indeed, the Batemans have exerted control over the Association since 2015, notwithstanding that they are no longer record owners of 39 West Main Street and, as such, do not appear to be members of the Association. The Village — which appears to be a member of the Association based upon its ownership of 51 and 55 West Main Street — is wholly absent from the discussion, as is South Dominion, the current owner of 39 West Main Street. As the owner of 57 West Main Street, Rowan is undisputedly a member of the Association — as is petitioner, at least under the terms of the original Certificate of Incorporation. Vance Bateman signed the Amended Certificate of Incorporation and Amended By-Laws in 2022 in an attempt to divest petitioner of its membership in the Association and deem it a customer — but the validity of these amended documents is dubious. 
In this regard, the Court observes that these amended documents strangely reference different properties than the original Certificate of Incorporation and By-Laws — with no explanation whatsoever. Specifically, while the original documents indicate that the owners of 39, 41-45, 47-49 51, 55, and 57 West Main Street are members of the Association, the amended documents then indicate that the owners of 37-39, 41-45, 47-49, and 55-57 West Main Street are eligible for membership — so 37 West Main Street has been added and 51 West Main Street has been taken away. 55-57 have also been joined as seemingly one property, while the record reflects that the Village owns 55 West Main Street and Rowan owns 57 West Main Street. This case presents layer, upon layer, upon layer, of complexities and irregularities. 
One thing all the parties agree upon is that the absorption field needs to be replaced. Their relationship has clearly devolved to the point that they are no longer able to work together to arrange for this replacement. Indeed, the parties cannot even agree on who is a member entitled to vote — nor can the Court ascertain who is a member from this record. Under the circumstances, the Court finds that appointment of a temporary receiver necessary to preserve the Association's property and carry on its business (see N-PCL 1111). Indeed, to the extent that substantial fines appear imminent if the absorption field is not replaced, there exists "danger of irreparable loss and . . . a receivership is necessary for the protection of the interests of the parties" (Cellino v Cellino & Banres, P.C., 175 AD3d 1120, 1123 [4th Dept 2019]; see CPLR 6401 [a]; 23A Props., Inc. v New Mayfair Dev. Corp., 212 AD3d 900, 901 [3d Dept 2023]; Nelson v Nelson, 99 AD2d 917, 918 [3d Dept 1984]). The second aspect of the motion is therefore granted with Anthony V. Cardona, Jr., Esq.. Thorn Gershon Tymann Bonnani LLP, 22 Clinton Avenue, Albany, New York 12207, (518) 464-6770, appointed as temporary receiver to proceed with the replacement of the absorption field in accordance with the plan approved by the DEC, and to otherwise conduct the day-to-day business of the Association, pending further [*8]Order of the Court.[FN6]
 The parties are directed to cooperate fully with the temporary receiver to ensure that the absorption field is replaced in an expeditious and economical manner, and that the day-to-day operations of the Association proceed without undue complication.
The Court further finds that a preliminary injunction is warranted to maintain the status quo pending resolution of the issues outlines hereinabove (see N-PCL 1113 [a] [1]; Friedman v Ragin, 228 AD2d 642, 643 [2d Dept 1996]). Absent such a preliminary injunction, the temporary receiver may well be frustrated in his efforts. The third aspect of the motion is therefore granted to the extent that the Association and its directors and officers — including the Batemans and Rowan — are restrained from exercising any corporate powers and from paying out or otherwise transferring property of the Association pending further Order of the Court, absent express permission from the Court. The TRO previously issued is hereby replaced with this preliminary injunction.[FN7]

Based upon the foregoing, petitioner's motion is granted to the extent that (1) Anthony V. Cardona, Jr., Esq. is appointed as temporary receiver to proceed with the replacement of the absorption field in accordance with the plan approved by the DEC and to otherwise conduct the day-to-day operations of the Association pending further Order of this Court; and (2) the Association and its directors and officers — including the Batemans and Rowan — are restrained from exercising any corporate powers and from paying out or otherwise transferring property of the Association pending further Order of the Court, absent express permission from the Court. The remainder of petitioner's motion is denied.
A conference is hereby scheduled for 10:30 A.M. on February 20, 2024 at the Warren County Courthouse. Counsel for the parties are directed to appear at this time, together with the temporary receiver, to discuss the details of the temporary receivership as well as the issue of an undertaking, which has not been briefed by the parties. In the event counsel wish to submit briefs on this latter issue, they may do so on or before February 16, 2024.
Therefore, having considered NYSCEF document Nos. 3, 5, 10, 11, 21 through 30, 33 through 51, 53, 57, and 58, and oral argument having been heard on January 17, 2024 with Matthew Sgambettera, Esq. appearing on behalf of plaintiff/petitioner and William F. Ryan, Jr., Esq. appearing on behalf of defendants/respondents West Main Street Cambridge Sewage Disposal Association, Inc., Vance Bateman, Shawn Bateman, Bridget Rowan and South Dominion Ltd S.A., it is hereby 
ORDERED that petitioner's motion is granted to the extent that (1) Anthony V. Cardona, Jr., Esq. is appointed as temporary receiver to proceed with the replacement of the absorption [*9]field in accordance with the plan approved by the DEC and to otherwise conduct the day-to-day operations of the Association pending further Order of this Court; and (2) the Association and its directors and officers — including the Batemans and Rowan — are restrained from exercising any corporate powers and from paying out or otherwise transferring property of the Association pending further Order of the Court, absent express permission from the Court; and it is further
ORDERED that the remainder of petitioner's motion is denied; and it is further
ORDERED that the parties shall cooperate fully with the temporary receiver to ensure that the absorption field is replaced in an expeditious and economical manner, and that the day-to-day operations of the Association proceed without undue complication; and it is further
ORDERED that respondents' cross motion is denied in its entirety; and it is further
ORDERED that counsel for the parties and the temporary receiver shall appear for a conference at 10:30 A.M. on February 20, 2024 at the Warren County Courthouse to discuss the details of the temporary receivership as well as the issue of an undertaking, with counsel invited to submit briefs on this latter issue on or before February 16, 2024, should they so choose.
The above constitutes the Decision and Order of this Court.
The original of this Decision and Order has been filed by the Court. Counsel for petitioner is hereby directed to serve with notice of entry.
Dated: January 25, 2024
Lake George, New York
_________s/_______________________
ROBERT J. MULLER, J.S.C.
ENTER:

Footnotes

Footnote 1: The New York State Attorney General has not appeared.

Footnote 2:The Tax Map numbers were left blank in the original By-Laws.

Footnote 3:This Declaration is referenced throughout the By-Laws, with the first page stating that "[t]hese By-Laws are set forth to comply with the Declaration and, in the event any of the provisions hereof conflict therewith, the provisions of the Declaration shall control" [NYSCEF document No. 42, at ¶ 3]. That being said, it does not appear that a Declaration was ever adopted or — if it was — it is not part of the record presently before the Court. 

Footnote 4:During oral argument, counsel for respondents also referenced an apparent easement dispute that is preventing the work from starting. This issue, however, was not raised anywhere in the papers and, as such, is not properly before the Court (see e.g. Matter of Allrich v Regents Review Comm. Off. of Legal Servs., 179 AD3d 1156, 1158 [3d Dept 2020]; Matter of Sanders v New York State & Local Employees' Retirement Sys., 126 AD3d 1281, 1282 [3d Dept 2015]).

Footnote 5:The relationship between the Batemans and South Dominion is entirely unclear from the record. It is likewise unclear from the Department of State's website, which lists Javier Fernandez of 190 Brownell Road, Cambridge, New York 12816 as the Chief Executive Officer of the company and Dana Cooper of 166 Brownell Road as the individual to whom the Secretary of State should forward service of process. Neither of the Batemans are listed as having any interest in the company. The Court attempted to obtain additional information relative to the relationship between the Batemans and South Dominion during oral argument, but to no avail.

Footnote 6:Given the acrimonious nature of the parties relationship, the appointment of a member of the Association as temporary receiver would surely be ineffective and ill-fated.

Footnote 7:It does not appear that a petitioner must demonstrate a likelihood of success on the merits, irreparable harm if the injunction is not granted, and the balance of the equities is in its favor to establish its entitlement to a preliminary injunction under N-PCL 113. That being said, the Court nonetheless finds that it has succeeded in establishing each of these factors. Given the facts outlined above, petitioner has demonstrated a likelihood of success on the merits and the balance of the equities in its favor. Further, irreparable harm will result if the absorption field is not replaced and the DEC imposes fines in the amount of 37,500.00 per day. Indeed, such hefty fines will likely render the Association insolvent and its members without a sewage system.